HILLS DRY GOODS COMPANY, INC., Appellant, vs. INDUS-
TRIAL COMMISSION and another, Respondents.

*December 6, 1934—January 8, 1935.*

For the appellant there were briefs by *Wurster, Scheinfeld & Schlatterer* of Milwaukee, and oral argument by *John L. Schlatterer*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan*.

*Charles F. Millmann* of Milwaukee, for the respondent Klicka.

ROSENBERRY, C. J. Sec. 102.60, Stats., provides:

"When the injury is sustained by a minor illegally employed, compensation and death benefits shall be as follows:
  "(1) . . .
  "(2) . . .
  "(3) Treble the amount otherwise recoverable, if the injured employee is a minor of permit age, or over, and at the time of the injury is employed, required, suffered, or permitted to work at prohibited employment."

Sec. 103.05 (3) provides:

"(3) Until such time as the industrial commission shall investigate, determine and fix the classifications provided for in paragraph (b) of subsection (2) of this section, the employments and places of employment designated in the following schedule shall be deemed to be dangerous or prejudicial to the life, health, safety or welfare of minors or females under the ages specified:
  "(a) . . .
  "(b) Minors under eighteen years of age:
  "  . . .
  "(6) Elevators; in the running or management of any elevators, lifts or hoisting machines."

With respect to the illegal employment, the commission found as follows:

"(4) There is a serious dispute and conflict in the testimony with respect to whether or not the applicant actually operated the respondent's freight elevator during his em-

ployment for the respondent herein. The applicant and his witnesses contend that he did operate the freight elevator and the respondent's witnesses contended to the contrary. There is no dispute but what the applicant misrepresented his age to be in excess of that which it actually was at the time of entering the respondent's employ. In view of this misrepresentation of age on the part of the applicant, which is no defense to the respondent against treble indemnity, the commission believes it is fair to assume from the record that the respondent believed the applicant to be older than he actually was. There was no reason for the respondent's contention in claiming to have instructed the applicant not to operate the elevator, and upon the testimony, the commission finds as a fact that the applicant did operate the respondent's elevator as a part of his employment and that at the time of his injury the applicant was performing service in connection with the operation of the elevator and that his injuries resulted through his efforts to operate said elevator."

The commission further found:

"There is no dispute but what the respondent's freight elevator complied with the safety requirements of the elevator code issued by the Industrial Commission. The record discloses that several of the respondent's employees opened the doors of the freight elevator shaftway when the elevator was not at a certain landing by the use of either a cardboard or a wire coat hanger. This practice was admitted by the applicant's foreman and the record is barren of any proof on the part of the applicant's foreman to prohibit such a practice. In view of the foregoing, the commission finds that there was no wilful failure on the part of the applicant to obey any reasonable rule adopted by this employer for the safeguarding of employees operating or riding on the freight elevator."

The only question raised upon this appeal is the sufficiency of the evidence to sustain the finding upon which treble indemnity was awarded. The evidence upon the trial was as the commission found squarely in conflict as to whether or not Klicka had at times during the three days of his service operated the elevator in the general course of discharging

his duties as employee. It is considered that upon the evidence offered and received the finding of the commission as to that fact must be sustained. No useful purpose would be served by setting out the evidence in detail.

The most serious question raised is with respect to the sufficiency of the evidence to sustain the finding of the commission,—

"that at the time of his injury the applicant was performing service in connection with the operation of the elevator and that his injuries resulted through his efforts to operate said elevator."

It appears from the evidence that the only person who had any direct knowledge as to what Klicka did on the morning in question in connection with the operation of the elevator was Klicka himself, although there are surrounding facts and circumstances which throw some light upon it. It seems to appear without dispute that on the morning in question Klicka arrived at the store about 7:30. He then went to the basement and changed his clothes. He then says that he thought he saw the elevator at the first or main floor. According to his testimony he then went to the main floor and started to get a box for the purpose of getting a piece of card-board with which to open the main floor doors. Roman Kaczmarek, the janitor, refused to let him have the box. Whether he made a search for another piece of card-board or wire does not appear. He was asked:

"Did you open the elevator doors? A. I don't know. I do not know what happened after that. I did not know I was hurt until I was told."

Upon cross-examination he testified:

"I didn't, as a matter of fact, pry that door open that morning to find out where that elevator was; I didn't pry that door open and step in there and look up to see where it was and then fall, no, I don't recall anything like that. . . . The doors on the first floor were closed between a quarter to eight and eight o'clock that morning,—the doors

of the elevator,—I am quite sure of that, yes. Q. And that was why you pried it open because they were closed; is that it? A. I don't know if I pried them open. . . . I don't believe I remember what happened that morning; as to whether I wouldn't say that the doors were open or the doors were closed positively,— they might be closed and they might not;—the whole thing about that morning is hazy."

The janitor, Roman Kaczmarek, testified that on Saturday morning, March 12th, the morning in question, he went to work at 7 o'clock. He relieved the night watchman; that from 7:15 on he sat near the soda fountain where he could watch the door and let the people in who were coming to work. He said:

"That morning I had occasion to let Tony in at 7:30; it was the first day I really spoke to him. I sat down and read the paper, and he went down stairs and came up a little later, and he wanted a box I used to have standing near the gate; I told him he could not have it; I had use for it. As to when I first found out that Tony had been injured, Norbert came up and told Frank he had been injured. That was 8 o'clock."

On cross-examination Roman said that Klicka wanted the box to tear it up to open the door. It subsequently appeared, however, that this was information he acquired from Klicka subsequent to the accident. He further testified:

"I did not see him open the door; I did not see him after that; I did not open that elevator door that morning."

The place where Roman sat at the soda fountain reading the paper was fifteen or twenty feet from the elevator door.

Mrs. Hill, an employee, whose duties were in connection with the restaurant, testified that on the morning in question she had taken the elevator to the fifth floor with supplies for the restaurant. It was her custom, which she followed this morning, to take the elevator down about 8 o'clock. She said:

"Before I took the elevator down I called down the shaft to close the doors; I figured somebody was standing there

trying to open them. As to whether that was true during the three days preceding the accident also, that procedure of mine,—yes. I did the same thing every morning, yes, but I didn't use the emergency switch every morning—that was the only morning. . . . When I got to the main floor the doors were wide open. It struck me very strange and I went over to Roman. I said, 'Roman, did you know those doors were wide open and somebody could have got hurt?' He said, 'What doors?' I said, 'The elevator doors on the main floor are open as wide as they can be.' He said, 'That is strange.' He went over and closed them—Roman was sitting at the soda fountain at the time."

Upon this evidence the commission found that Klicka at the time he sustained his injury was engaged in the operation of the elevator. The question to be determined is—Is the evidence sufficient to sustain that finding?

For the reason that in a large share of the cases coming to this court we are asked to say that the findings of the commission should be set aside because there is no evidence to support them, this is as appropriate a time as any to review briefly the law upon this subject. In *International H. Co. v. Industrial Comm.* 157 Wis. 167, 147 N. W. 53, the whole matter of the power of the court to set aside an award of the Industrial Commission is considered, and it was held that by statute the findings of fact made by the commission within its power in the absence of fraud are conclusive; that it was clearly outside of its power to find essential facts that had no support in the evidence, from which it follows that there must be some support in the evidence for findings of fact made by the commission.

In *Oldenberg v. Industrial Comm.* 159 Wis. 333, 150 N. W. 444, consideration was given as to what constituted "some evidence" sufficient to support a finding. It was said:

"Manifestly a very clear case must be made to call for a ruling [that the order of the commission was made without any evidence to sustain it]. . . . All evidence which tends to render probable or improbable the existence of the facts which are the subject of inquiry is relevant, and conversely

all relevant facts have this tendency. In order to support an argument to the effect that an ultimate conclusion of fact has no evidence to support it there must be shown an absence of all evidence or an absence of any such relevant evidence."

While the court evidently considered the finding was made against the weight of the evidence, it was nevertheless sustained.

While the language relating to the *quantum* of evidence varies somewhat, the terms used such as "credible evidence," "some evidence," and "evidence" are practically, as used, synonymous. The matter was given very careful consideration in a case involving a motion for nonsuit, *Kroger v. Cumberland Fruit Package Co.* 145 Wis. 433, 130 N. W. 513. The real question is, in a particular case,—Is there or is there not evidence of the fact found? The test suggested by Mr. Wigmore is perhaps as good as any that can be suggested. As applied to Industrial Commission cases it is:

"Are there facts in the evidence which if unanswered would justify a person of ordinary reason and fairness in affirming the existence of the facts which the claimant is bound to establish?" 5 Wigmore, Evidence, § 2494.

The matter was carefully considered in *Creamery Package Mfg. Co. v. Industrial Comm.* 211 Wis. 326, 248 N. W. 140. In that case death benefit was claimed under the compensation act on the ground that deceased contracted typhoid fever while performing services in the course of his employment. He was a traveling man and traveled over four states. It was held:

"Mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact. It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question from the realm of conjecture. [Citing case.] A finding of

fact made by the commission cannot be based upon mere conjecture any more than a finding of fact by a court or jury. While it is within the province of the commission to draw inferences, they must be drawn from established facts which logically support them. If not so supported, the findings of the commission based on its inferences are mere conjecture in excess of its powers."

In this case there is no direct testimony that the claimant fell into the elevator shaft while operating, or attempting to operate, or even getting ready to operate, the elevator. Do the facts adduced upon the hearing permit of an inference that he was operating the elevator? In this connection an inference is to be clearly distinguished from a mere guess or conjecture. As was said in *Creamery Package Mfg. Co., supra*, "inferences . . . must be drawn from established facts which logically support them." In other words, they must be rational. The inference must not only be rational, but it must be a logical deduction from the established facts and not one of several inferences which might with equal propriety be drawn from the same facts.

In *Belle City M. I. Co. v. Industrial Comm.* 180 Wis. 344, 192 N. W. 1010, the commission found that a hernia was a personal injury sustained while claimant was performing services growing out of and incidental to his employment. The court said:

"The mere fact that during the period covered by his employment the applicant discovered a protrusion through the inguinal tract is not sufficient to show any relation between his employment and his condition. It cannot be said that it must have come from his work. He may have slipped. He may have been engaged in work on his own account, or it may have come about in any of the numerous ways by which the manifestations of a congenital or acquired weakness are made manifest. There is no evidence of an injury, accidental or otherwise."

In this case the testimony of the claimant is to the effect that he did not pry the door of the elevator open; that he

did not open the door; that he did not look into the elevator shaft to see where the elevator was; and that he does not know whether the door was open or closed. In fact, his recollection of everything that happened from the time he had the conversation with Roman about the box until after he was hurt is hazy. If the doors were open he may have fallen in accidentally. The elevator by the undisputed facts was on the fifth floor and not on the first floor. Whether he walked into the opening expecting to find the elevator there, as he said he thought it was, is at least a possibility. It perhaps is needless to speculate on the possibilities in connection with this case. The burden of proof was upon Klicka to establish by evidence that he was engaged in operating the elevator at the time he sustained his injury. We find no evidence which by any reasonable interpretation permits of inference that he was so engaged. When considered in connection with his denial that he opened the door or stepped into the elevator shaft, there is no room for a permissible inference that he was so operating the elevator and was injured while so doing. There are no preponderating probabilities in this case which turn the scale in favor of the claimant.

We may point out in this connection that application of the test suggested excludes the consideration of all questions relating to the weight of the evidence. When the test is applied and it is found that there are facts in evidence which if unanswered would warrant the commission in making the finding complained of, this court can go no further. The weight of the evidence and credibility of the witnesses under such circumstances are wholly for the commission. *William Rahr Sons Co. v. Industrial Comm.* 166 Wis. 28, 163 N. W. 169. If the commission finds against the great weight and clear preponderance of the evidence, or if it finds upon a given state of the evidence one way in one case and another way in another case, there being the requisite minimum evi-

dence in each case, the matter is beyond the jurisdiction of this court. While findings made against the great weight and clear preponderance of the evidence justify the party against whom they are made in feeling that justice has not been done, this court has no power to set aside an award for that reason. The determination of the commission under such circumstances being final and conclusive, it should be reached in accordance with the established principles of law which are laid down in matters of this kind to enable tribunals charged with the duty of finding the facts to do justice between the parties to the controversy.

*By the Court.*—The judgment appealed from is reversed, and cause remanded to the trial court, with directions to enter judgment setting aside the award of treble damages.