MOTOR TRANSPORT COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent: YULE TRUCK LINES, INC., Intervening Respondent.

*December 4, 1952—January 6, 1953.*

32

34

For the appellant there were briefs and oral argument by *A. M. Sells* and *C. T. Young,* both of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *William E. Torkelson,* chief counsel for the Public Service Commission, and *E. Weston Wood,* assistant attorney general, and oral argument by *Mr. Wood* and *Mr. Torkelson.*

For the intervening respondent there was a brief and oral argument by *Warren P. Knowles III* of New Richmond, and *Claude J. Jasper* of Madison.

CURRIE, J. The appellant, Motor Transport, contends that the Public Service Commission in ordering the issuance of the certificate to Yule to operate as a common motor carrier in intrastate commerce between Milwaukee, Racine, and Kenosha, violated the legislative standards imposed in ch. 194, Stats., under which the commission is granted the authority to regulate the motor transportation of goods. The particular legislative standard, which it is claimed was so transcended, is the alleged rule that no new certificate to operate is to be granted if the service of the carrier already licensed (in this case Motor Transport) is adequate.

It is urged that such rule is to be gathered from certain provisions contained in secs. 194.02, 194.18 (5) and (9), and 194.23 (1), Stats. These statutory provisions are as follows:

Sec. 194.02, Stats., sets forth the legislative intent underlying the enactment of ch. 194, Stats., conferring upon the commission the power to regulate motor transportation of goods and persons, and states that one of the purposes of such enactment is "to carefully preserve, foster, and regulate transportation to the end of developing and preserving each separate type of the transportation system by highway and rail adequate to meet public needs."

Sec. 194.18, Stats., provides that it is the duty of the commission in regulating motor carriers (5) to "insure adequate transportation service to the territory traversed" and *"prevent unnecessary duplication of service"* and (9) "to supervise and regulate such common motor carriers in all matters affecting their relationship with the public and with other common carriers and with each other, to the end that adequate service at reasonable rates shall be afforded."

Sec. 194.23, Stats., requires that the commission before granting a certificate authorizing a motor carrier to operate "shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers. . . ."

The foregoing statutory provisions make it clear that the paramount goal sought to be attained by the regulation of motor carriers thereby authorized is that of providing adequate motor-transportation service to meet the public needs, and any other objective is secondary. If these provisions do establish a rule, that no new certificate to operate is to be granted to another carrier when the service of the existing licensed facilities is adequate, the same must be spelled out by implication and not by direct statement in the statutes under consideration. Whether or not these statutes are subject to the interpretation of laying down as a legislative standard such rule, the commission appears to have adopted this rule as a matter of commission policy in passing upon applications for motor-carrier certificates. However, we find it unnecessary in this case to decide whether these statutes are to be so construed. This is because of our conclusion that there has been no finding made by the commission that Motor Transport's existing service is adequate to meet public needs.

The commission in its original opinion filed upon the conclusion of the hearings held on Yule's application stated that Motor Transport's service "has been generally satisfactory to its patrons" and that if the proceedings were upon a service complaint a holding that Motor Transport's "service is reasonably adequate would be warranted." Motor Transport maintains on this appeal that such statement of the commission is equivalent to a finding that its service was adequate for all purposes under ch. 194, Stats., but such contention is rebutted by the following statements made by the commission in its opinion:

"However, we are dealing with the public interest and public convenience and necessity, in its broader aspects. As the Wisconsin supreme court has said in *Clintonville Transfer Line v. Public Service Comm.* 248 Wis. 59–74, quoting with approval the language of the supreme court of Utah:

" 'If a new or enlarged service will enhance the public welfare, increase its opportunities, or stimulate its economic, social, intellectual, or spiritual life to the extent that the patronage received will justify the expense of rendering it, the old service is not adequate.'

"While perhaps meeting the statutory test of 'reasonably safe and adequate service' (sec. 194.29, Stats.), the protestant's service has failed to meet the test of the public interest and public convenience and necessity in this broader sense recognized by the supreme court. The record is uncontroverted that shippers located in Racine and Kenosha who purchase merchandise in both Milwaukee and Chicago have purchased a larger percentage in Chicago. Their experience has convinced them that faster and more dependable service is available for movements to and from Chicago. Thus, the certification of an additional competitive service between Kenosha and Racine on the one hand and Milwaukee on the other might well restore to Milwaukee in some measure business which that city has lost, thereby improving the service to the public in the area."

Appellant severely condemns the quoted language of the Utah court, which received our apparent blessing in *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 21 N. W. (2d) 5. There is justification for such condemnation because certainly the stimulation of the "social, intellectual, or spiritual life" of a community is not one of the legislative standards set forth anywhere in ch. 194, Stats., to be followed by the commission in granting or refusing a common-motor-carrier certificate. However, this criticized portion of the quotation from the Utah decision (*Union Pac. R. Co. v. Public Service Comm.* (1943), 103 Utah, 459, 135 Pac. (2d) 915) must be held to be harmless surplusage in

the instant case because the commission makes no reference to any evidence bearing upon the stimulation of "social, intellectual, or spiritual life" of the communities to be served by the applicant Yule. On the contrary it is abundantly clear that the commission bases its finding that "the proposed operations of the applicant as a common motor carrier of property are in the public interest and required by public convenience and necessity" upon the ground that "there is a public need for such service" with respect to meeting transportation needs of the communities to be served, and not social, intellectual, or spiritual needs.

The conclusion reached by the commission that public convenience and necessity may justify the granting of an application for a certificate to a new applicant carrier, even though the service being rendered by the carrier already licensed and operating is adequate in the sense that a service complaint cannot be successfully prosecuted against it, is supported by the following quotation from an opinion of the New York Public Service Commission in *Re Troy Auto Car Co.* P. U. R. Anno., 1917A, 700, 707, set forth with approval in the decision of this court in *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 73, 21 N. W. (2d) 5:

"It is dangerous to undertake to formulate abstract definitions in deciding a concrete case, but we take it that for such purposes as are involved in this and similar applications, a public convenience and necessity exists when the proposed facility will meet a reasonable want of the public and supply a need, if existing facilities, *while in a sense sufficient,* do not adequately supply that need." (Emphasis supplied.)

Appellant relies upon our decision in *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 34 N. W. (2d) 238, as ruling the present controversy in favor of Motor Transport. In that case, as a result of both the trial court and this court affirming the order of the commis-

sion in denying a certificate to the applicant carrier, another carrier which opposed the application remained the sole common motor carrier operating between certain specified points. This court held that ch. 194, Stats., does not create any presumption in favor of, or against, either monopoly of motor-carrier service or competition, but the commission is free to determine which of the two will best serve the public interest. Inasmuch as the court found that there was substantial evidence in view of the entire record to sustain the finding of the commission, that public convenience and necessity would not be promoted by the issuance of a certificate to the applicant, the trial court was right in affirming the determination of the commission. Motor Transport, however, particularly stresses that portion of the decision in the. *Gateway Case* which cites a rule laid down in an annotation in 67 A. L. R. 957, entitled "When granting or refusing certificate of necessity or convenience for operation of motor-buses justified," the same being stated by this court as follows (253 Wis. 412) :

"The general rule is that a certificate of convenience and necessity may not be granted where there is existing service in operation over the route applied. for, *unless it is required in the public interest.* Anno. 67 A. L. R. 957. Note and cases cited." (Emphasis supplied.)

It would seem that the qualification *"unless it is required in the public interest"* completely destroys the effectiveness of appellant's argument that the above-quoted rule was violated by the commission's determination in the instant case. The commission has specifically found that additional service is required in the public interest.

The Federal Motor Carrier Act and ch. 194, Stats., are similar in many respects. Both statutes, as well as the statutes of most of the states that follow regulatory procedure, require that a finding of convenience and necessity must be made before a new common motor carrier may be authorized.

Appellant maintains that the rule adopted in federal courts with respect to construing the powers of the Interstate Commerce Commission under the Federal Motor Carrier Act affords less protection to existing carriers against the Interstate Commerce Commission authorizing additional competition than is provided by ch. 194, Stats., and cites *Lang Transportation Corp. v. United States* (D. C. Cal. 1948), 75 Fed. Supp. 915, 930, in support of such position. That case makes no direct reference to Wisconsin but only to "state law in some jurisdictions." However, we believe that the quotations from the federal decisions hereinafter set forth are no less applicable under ch. 194, Stats., than they would be under the federal act. Both the state and federal statutes regulating transportation were designed to prevent imprudent, wasteful, and unnecessary duplication of service.

In *Beard-Laney v. United States* (D. C. S. C. 1949), 83 Fed. Supp. 27, 32, affirmed in 338 U. S. 803, 70 Sup. Ct. 64, 94 L. Ed. 486, the court stated:

"It is for the commission, not the court, to say what public convenience and necessity requires and whether these will be better served by licensing an additional carrier *than by permitting those already licensed to expand their facilities.*" (Emphasis supplied.)

The United States supreme court in *Interstate Commerce Comm. v. Parker* (1945), 326 U. S. 60, 70, 65 Sup. Ct. 1490, 89 L. Ed. 2051, declared:

". . . the commission may authorize the certificate even though the existing carriers might arrange to furnish successfully the projected service."

The commission in its opinion on rehearing set forth in the statement of facts immediately preceding this opinion pointed out "that service orders cannot take the place of managerial initiative" and that management alone can "create a service which is above minimum standards." This accords

with the following statement made by the Interstate Commerce Commission in *Santa Fe Trails Stages, Inc.* (1940), 21 Motor Carrier Cases, 725, 748, to wit:

"Regulated monopoly is not a complete substitute for competition. The latter fosters research and experimentation and induces refinements in service which are not likely otherwise to be accomplished."

The determination of the commission in this case came before the trial court for review under the Uniform Administrative Procedure Act (ch. 227, Stats.). Sec. 227.20 (2), Stats., provides, "Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it. . . ." This court recognizes that the Public Service Commission possesses wide experience and much technical knowledge in the field of regulation of motor-carrier transportation of property. Furthermore, the legislature, by the provisions of ch. 194, Stats., has conferred wide discretionary powers upon the commission in this regulatory field. It is true, as urged by appellant, that such discretion must be exercised by the commission within the bounds of the legislative standards set forth in ch. 194, Stats. After most careful consideration, it is our conclusion that the commission's findings and order in the instant case do not transcend such bounds.

Appellant raises one further point that perhaps has not received the attention in some of our past decisions that it has merited. This is the weight to be accorded to the words *"in view of the entire record"* appearing in sec. 227.20 (1) (d), Stats., which authorizes the reviewing court to reverse or modify the decision of the agency if the substantial rights of the appellant have been prejudiced as the result of the agency's findings, conclusions, or decision being *"unsupported by substantial evidence in view of the entire record* as sub-

mitted." Ch. 227, Stats., was enacted in 1943, and prior thereto there was no similar provision in our statutes. In 1946 this same principle was incorporated into the statutes of the United States by the enactment of the United States Administrative Procedure Act. Likewise the 1947 Labor Management Relations Act (the Taft-Hartley Act) adopted the same rule which is to be found in 29 USCA, Labor, sec. 160 (f), and provides: "the findings of the board with respect to questions of fact if supported by substantial evidence *on the record considered as a whole* shall in like manner be conclusive."

These provisions in the two federal acts just mentioned were carefully analyzed by the United States supreme court in the case of *Universal Camera Corp. v. National L. R. Board* (1951), 340 U. S. 474, 487, 488, 71 Sup. Ct. 456, 95 L. Ed. 456, and the legislative history of each was reviewed in order to ascertain the legislative intent, and the court came to the conclusion that the standard of proof required under the United States Administrative Procedure Act and the Taft-Hartley Act was the same. The conclusion of the court with respect to the function of the courts in reviewing findings of the national labor relations board is as follows:

"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a labor board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. *The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.* This is clearly the significance of the requirement in both statutes that courts consider the whole record. . . .

"To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the

labor board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. *Nor does it mean that even as to matters not requiring expertise a court may displace the board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.* Congress has merely made it clear that a reviewing court is not barred from setting aside a board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the board's view." (Emphasis supplied.)

We believe that the principles enunciated by the United States supreme court in the *Universal Camera Corp. Case, supra,* are sound and are applicable to the proper interpretation of the phrase *"substantial evidence in view of the entire record"* in sec. 227.20 (1) (d), Stats. Since the adoption of our Uniform Administrative Procedure Act in 1943 containing such provision it is no longer proper for a court in reviewing the findings of an administrative agency to affirm such findings by merely considering isolated testimony, which if standing alone, would be sufficient to sustain the findings, without considering other testimony in the record which impeaches the same.

Appellant maintains that if the learned trial judge had applied the principles of the *Universal Camera Corp. Case, supra,* in reviewing the evidence in the instant case he might have reached the opposite conclusion than that which he did, inasmuch as he relied upon *Hills Dry Goods Co. v. Industrial Comm.* (1935), 217 Wis. 76, 258 N. W. 336, as to the quantum of evidence necessary to sustain the Public Service Commission's findings. It contends that the rule as to sufficiency of evidence to sustain a finding of fact by the Industrial

Commission is different than that applying to a finding of fact by the Public Service Commission.

Sec. 102.23, Stats., which applies to court review of the findings of the Industrial Commission, specifies that such findings, in the absence of fraud, are "conclusive." However, this court has repeatedly held in interpreting this section of the Workmen's Compensation Act, in light of the provisions of the act, that it is clearly outside of the powers of the Industrial Commission to find essential facts that have no support in the evidence. *International H. Co. v. Industrial Comm.* (1914), 157 Wis. 167, 175, 147 N. W. 53, and *Hills Dry Goods Co. v. Industrial Comm., supra* (217 Wis. 82). In considering the quantum of evidence necessary to sustain a finding by the Industrial Commission, this court stated in the *Hills Dry Goods Co. Case, supra,* that the terms *"credible evidence," "some evidence,"* and *"evidence"* used in stating the rule were practically synonymous, and declared (217 Wis. 85):

"When the test is applied and it is found that there are facts in evidence *which if unanswered* would warrant the commission in making the finding complained of, this court can go no further. The weight of the evidence and credibility of the witnesses under such circumstances are wholly for the commission. . . . If the commission finds against the great weight and clear preponderance of the evidence, or if it finds upon a given state of the evidence one way in one case and another way in another case, there being the requisite minimum evidence in each case, the matter is beyond the jurisdiction of this court." (Italics supplied.)

Clearly the italicized words *"which if unanswered"* appearing in the foregoing quotation cannot mean uncontradicted by other evidence in the record in view of what is stated therein that this court has no power to pass upon the credibility of witnesses or the weight of the evidence. *"Unexplained"* would seem to be a more accurate expression than *"unanswered."* In this connection the decision in *Matter of Stork*

*Restaurant, Inc., v. Boland* (1940), 282 .N. Y. 256, 26
N. E. (2d) 247, is pertinent. The New York court of appeals
had before it for interpretation a provision of the New York
State Labor Relations Act to the effect that "the findings of
the board as to the facts, if supported by evidence shall be
conclusive," and the court stated (282 N. Y. 274):

"There is often greater difficulty in applying. the test than
in formulating it. The evidence produced by one party must
be considered in connection with the evidence produced by
the other parties. *Evidence which unexplained might be con-
clusive may lose all probative force when supplemented and
explained by other testimony.* The board must consider and
sift all the evidence—accepting the true and rejecting the
false—and must base inferences on what it has accepted as
true. Choice lies with the board and its finding is supported
by the evidence and is conclusive where others might rea-
sonably make the same choice." (Emphasis supplied.)

The rule which this court in its more recent workmen's
compensation cases has applied is that the Industrial Com-
mission's findings are conclusive if supported *by any credible
evidence*: *Jasperson v. Industrial Comm.* (1939), 231 Wis.
142, 146, 285 N. W. 391; and *Chitlik v. Industrial Comm.*
(1937), 225 Wis. 7, 9, 272 N. W. 859. Therefore, the
italicized sentence appearing supra in the quotation from the
*Stork Restaurant Case* would seem to be applicable in deter-
mining what is credible evidence necessary to sustain a find-
ing of fact by the Industrial Commission.

Mr. Ralph M. Hoyt in his article entitled "Wisconsin
Administrative Procedure Act" appearing in 1944 Wisconsin
Law Review, 214, quotes the same excerpt from the *Stork
Restaurant Case, supra,* which we have quoted in this opinion,
and states (p. 236):

"Such is the concept of 'substantial evidence' which has
now been written into the Wisconsin law of administrative
procedure; namely, the administrative finding is reversible

if 'unsupported by substantial evidence *in view of the entire record as submitted.'"

Mr. Hoyt served as chairman of the committee on administrative tribunals of the State Bar Association of Wisconsin which drafted·the Uniform Administrative Procedure Act embodied in ch. 227, Stats., and sponsored its adoption by the 1943 legislature and the foregoing statement by him therefore is entitled to weight. In comparing the quotation from the *Stork Restaurant* decision with that from the *Universal Camera Corp. Case, supra,* there would appear to be very little, if any, distinction in effect between them. We are not prepared to hold at this time that the rule of the *Universal Camera Corp. Case, supra,* broadens the scope of judicial review over that stated in the *Stork Restaurant Case, supra,* and the latter rule parallels to some degree that laid down by this court in *Hills Dry Goods Co. v. Industrial Comm., supra.* Therefore, although sec. 227.01 (1), Stats., excludes workmen's compensation case decisions by the Industrial Commission from review under the Uniform Administrative Procedure Act, the adoption of the Uniform Administrative Procedure Act may not have had the effect of widening the scope of judicial review of the Public Service Commission's findings of fact beyond that permitted to the courts with respect to review of findings of fact made by the Industrial Commission, as contended by appellant. This is especially so if the rule of the *Stork Restaurant Case, supra,* is properly applicable to workmen's compensation cases. In other words, the judicial review of the Industrial Commission's findings of fact in workmen's compensation cases is broader in scope than the language of some of the decisions of this court might indicate in light of the phrase *"facts in evidence which if unanswered"* appearing in the *Hills Dry Goods Co.* decision.

The transcript of the testimony taken at the hearings before the Public Service Commission comprises over 1600 pages of the record and in addition 24 exhibits were intro-

duced. A summary of the evidence which supports the essential findings of the commission is set forth in the statement of facts preceding this opinion. Appellant in its appendix sets forth a summary in abridged form of the testimony of only four of the many witnesses who testified, but has failed to point out how such summarized testimony of these four witnesses destroys the effect of the evidence produced by applicant and prevents the latter from being *"substantial evidence in view of the entire record."* Neither does our consideration of this summary of testimony in appellant's appendix lead to such a result.

*By the Court.*—Judgment affirmed.