CITY OF SEYMOUR and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*October 26—November 24, 1964.*

For the appellants there was a brief and oral argument by *Edward T. O'Neill* of Fond du Lac.

For the respondent Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

For the respondent Jankowski there was a brief by *Sigman, Sigman & Shiff* of Appleton, and oral argument by *Samuel Sigman.*

CURRIE, C. J. The employee Jankowski's expert witnesses testified that in their opinion one or both of his violent falls on the icy pavement in March, 1959, aggravated the pre-existing chordoma by damaging the surrounding tissues and making them more susceptible to the growth of the tumor. Based on this testimony the commission in its findings of fact found:

". . . that although his tumor pre-existed his injury of March 9 and March 16, it was asymptomatic and was not disabling; that the injury of such dates provoked a reaction and stimulated the development of the tumor, which had been quiescent;" . . . ."

Appellants challenge this finding, chiefly on the ground that the expert testimony supporting it exceeds the bounds of

reasonableness because such testimony espouses a medical theory that has no basis in recognized and authoritative medical literature. Some of this testimony is attacked also on the ground that it was based upon erroneously assumed facts.

A considerable portion of the briefs is devoted to the preliminary issue of the scope of judicial review of the commission's findings of fact in workmen's compensation cases. Past decisions of this court make it clear that, in passing on the issue of whether the evidence sustains a finding of the commission made in a workmen's compensation proceeding, the test is whether there is credible evidence which, *if unexplained,* would support the finding. *Shawley v. Industrial Comm.* (1962), 16 Wis. (2d) 535, 114 N. W. (2d) 872; *Wagner v. Industrial Comm.* (1956), 273 Wis. 553, 565, 79 N. W. (2d) 264, 80 N. W. (2d) 456; *Hills Dry Goods Co. v. Industrial Comm.* (1935), 217 Wis. 76, 85, 258 N. W. 336. See *Motor Transport Co. v. Public Service Comm.* (1953), 263 Wis. 31, 46, 47, 56 N. W. (2d) 548, where the term *"if unexplained"* is elucidated. *"Unexplained"* is not the equivalent of *uncontradicted,* inasmuch as the issue of credibility is solely for the commission when there is a direct conflict in testimony.

Appellants assume that the scope of review here is governed by sec. 227.20 (1) (d), Stats.,[1] of the Wisconsin Administrative Procedure Act. They err in their assumption because sec. 227.22 (2) provides, "Only the provisions of ss. 227.01 to 227.21 relative to rules are applicable to matters arising out of the workmen's compensation act or the un-

---

[1] "(1) . . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

" . . .

"(d) Unsupported by substantial evidence in view of the entire record as submitted;"

employment compensation act." Whether there would be a material difference in the scope of review of the commission's findings of fact in workmen's compensation cases if the provision of sec. 227.20 (1) (d) were to be applied we find it unnecessary to determine here.

With respect to whether the testimony of Jankowski's expert medical witnesses constituted credible evidence to sustain the commission's finding of fact, we turn to *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163. In that case this court held a jury award of $50,000 damages to a child necessarily implied a finding that prenatal injury was the cause of the child's being born a Mongoloid. A physician had testified that it was his opinion to a reasonable medical certainty that the accident had caused this result. We approved the result reached by the trial court denying the award and stated (at pp. 353, 354) :

"When scientific or medical theories or explanations have not crossed the line and become an accepted medical fact, opinions based thereon are no stronger or convincing than the theories. While this court has gone a long way in admitting expert testimony deduced from well-recognized scientific and medical principles or discoveries, nevertheless, the facts from which the opinion is made must be sufficiently established to have gained general acceptance in the particular medical field in which they belong. Otherwise, the opinion is based not on facts but conjecture."

The expert testimony adduced before the commission was that a chordoma is rather a rare tumor of low-grade malignancy. It originates from embryonic remnants of the notochord, which notochord develops into the spinal cord. While it is estimated that two percent of the population have such embryonic remnants or "rests" which predisposes them to chordoma, very few ever develop a chordoma. One expert witness testified that only .01 percent of this two percent of

the population ever are afflicted with such a tumor. Another expert witness testified that only one percent of all spinal cord tumors are chordomas.

Three expert medical witnesses testified in behalf of Jankowski: Doctors Oudenhoven, Cyrus, and Pessin.

Dr. Oudenhoven, although but thirty-three years of age at the time he testified in 1961, has an impressive record. After graduation from medical school in 1952 he was a neurological resident at St. Vincent's Hospital at Green Bay, assistant neurosurgeon at Great Lakes Naval Training Station, and acting neurosurgeon at the Veterans Administration Hospital at Dayton, Ohio. While at Dayton he was also an instructor in neurological surgery at Ohio State University Medical School. Dr. Oudenhoven testified that Jankowski's condition was distinctly related to his fall and that the trauma therefrom definitely aggravated or facilitated the development of this condition. On cross-examination the doctor stated his opinion "gets down to a sequence of events."

Dr. Cyrus is a pathologist specializing in neuropathology and is consultant to several Milwaukee hospitals. He is also on the teaching staff of Marquette University Medical School. Although he never attended Jankowski or examined him, Dr. Cyrus had the benefit of Jankowski's complete medical history as disclosed by the records of St. Vincent's Hospital of Green Bay and specimen slides of tissue taken from the tumor area. He expressed the opinion that the trauma from the fall most probably contributed to the tumor's alteration and that he could with reasonable certainty declare "that the chordoma expression is related to the trauma." Dr. Cyrus further testified: "The trauma aggravated the tumor and facilitated its extension." By the use of the word "facilitated" he meant that the trauma permitted the tumor's extension beyond the site of confinement by providing routes and avenues, which, prior to the occurrence of the trauma, "were not to its avail." The avenues of ex-

tension were provided when the trauma caused an inflammatory reaction in the tissues adjacent to and extending into the tumor. The presence of scar-tissue formation in the microscopic slides confirmed that the inflammatory reaction had occurred. Where there is fibrous tissue there was once succulent, inflammatory tissue.

For thirty years Dr. Pessin has been engaged in his profession as a clinical pathologist and anatomical pathologist. Since 1945 he has been an associate professor of pathology in the Marquette University Medical School and pathologist and director of laboratories at St. Mary's Hospital in Milwaukee. At one time he was senior pathologist at the state Laboratory of Hygiene at the University of Wisconsin in Madison. Prior to testifying he examined Jankowski's medical records and the slides of tissue. Dr. Pessin testified: His opinion to a reasonable medical certainty is that the trauma aggravated a pre-existing chordoma by causing disruption of the tissues and by creating spaces and avenues of extension so that the chordoma would spread; as a chordoma spreads beyond its confinement it invades soft parts around bone, including nerves; this causes compression of the nerves with resulting pain. On cross-examination he stated that there was no clinical evidence of the trauma having provided avenues of extension except the chronological sequence of events.

The city and its insurance carrier called but one medical expert witness, Dr. Enzer. For many years he has been a specialist in pathology. Since 1927, he has been director of pathology and clinical laboratories at Mt. Sinai Hospital in Milwaukee. He is undoubtedly a highly competent and greatly respected specialist in his field. Dr. Enzer testified: In his opinion Jankowski's falls had nothing to do with the latter's disability due to a malignant tumor of the spinal cord; there is no basis for relating a single trauma to the cause, development or behavior of a malignant tumor;

statistics of the two World Wars disprove that trauma causes or aggravates cancer; motor vehicle accident statistics also are to the same effect; the one exception is injuries which lead to longstanding damaged tissue which fails to heal; he has never seen a malignant tumor developing from a fracture or in the jaw of a person whose tissue was injured by a dentist; there is no evidence that the trauma of surgery has initiated a development, or aggravation, of a tumor; in order for a trauma to be effective to aggravate a tumor it should be proven to have applied itself to the tissue exactly where the tumor arose.

Appellants request this court to take judicial notice of certain authoritative medical literature dealing with cancer.[2] They contend that such medical literature establishes these two scientific facts: (1) The aggravation of pre-existing cancer by trauma is only a possibility and not a probability; and (2) in order for trauma to aggravate or accelerate the growth of pre-existing cancer it must have been directly applied to the tissue where the cancer is. This court does not feel that on the face of this record it can accept as scientific fact something that is directly contrary to the testimony of Doctors Oudenhoven, Cyrus, and Pessin. These three men are all specialists in either neurosurgery or pathology. Two of these men at the time of testifying were teaching in a leading medical school, and the third had taught in one.

---

[2] Lawyers' Medical Cyclopedia, edited by Charles J. Frankel and published by The Allen Smith Co., Indianapolis, Indiana, 1960, Vol. 5, Ch. 38, entitled Cancer and The Law; Medicolegal Considerations of Occupational Cancers by W. C. Hueper, M. D., Lawyers' Medical Cyclopedia, Vol. 5, page 558; Occupational and Post-Traumatic Cancer, by Fred W. Stewart, M. D., Pathologist, Memorial Hospital, New York City. The Bulletin, New York Academy of Medicine, March, 1947, pages 145–162; Trauma and Disease, by Brahdy and Kahm, published by Lea & Febiger, Philadelphia, 1937. Ch. XIV by Leila Charlton Knox, M. D.; Disease and Injury, by Leopold Brahdy, M. D., published by J. P. Lippincott Co., Philadelphia, 1961, Ch. 10.

Furthermore, I Larson, Law of Workmen's Compensation, p. 192.39, sec. 12.20, states:

" 'Aggravating' the disease is exemplified by cancer cases in which the malignant growth is ruptured or spread by occupational exertions, or in which its development is hastened by strains, impacts, or accidents in the course of employment." [3]

Appellants call our attention to the following comments of the learned trial judge appearing in his memorandum decision:

"Our own view of this testimony is that it is speculative and conjectural and without substantial scientific foundation. We cannot, however, presume to *substitute* our *opinion* for that of medical experts."

Had we been the trier of fact we might well have reached the same conclusion as the trial judge and found contrary to what the commission did. We cannot, however, hold as a

[3] Among the cases cited by Larson in which compensation was allowed on the ground that the disability from cancer was accelerated by trauma are: *Travelers Ins. Co. v. Rowand* (5th Cir. 1952), 197 Fed. (2d) 283; *Macon County Coal Co. v. Industrial Comm.* (1940), 374 Ill. 219, 29 N. E. (2d) 87; *Pixley v. Employers' Mut. Liability Ins. Co.* (La. App. 1958), 102 So. (2d) 113; *Taylor v. Mansfield Hardwood Lumber Co.* (La. App. 1953), 65 So. (2d) 360; *In re Sullivan's Case* (Mass. 1962), 186 N. E. (2d) 601; *Erickson v. Knutson* (1952), 237 Minn. 187, 54 N. W. (2d) 118; *Pittman v. Pillsbury Flour Mills, Inc.* (1951), 234 Minn. 517, 48 N. W. (2d) 735; *Dixie Pine Products Co. v. Dependents of Bryant* (1956), 228 Miss. 595, 89 So. (2d) 589; *Ricciardi v. Marcalus Mfg. Co.* (1957), 47 N. J. Super. 90, 135 Atl. (2d) 339; *Russo v. Wright Aeronautical Corp.* (1948), 137 N. J. L. 346, 60 Atl. (2d) 263; *Lefkowitz v. Silverstein* (1960), 11 App. Div. (2d) 841, 203 N. Y. Supp. (2d) 122; *De Angelo v. American Can Co.* (1960), 11 App. Div. (2d) 571, 200 N. Y. Supp. (2d) 614; *Smith v. Durham Aircraft Service, Inc.* (1960), 11 App. Div. (2d) 552, 200 N. Y. Supp. (2d) 76; *Glover v. Columbia Hospital of Richland County* (1960), 236 S. C. 410, 114 S. E. (2d) 565; *Boyd v. Young* (1951), 193 Tenn. 272, 246 S. W. (2d) 10.

matter of law that respondent's expert medical testimony is incredible because contrary to scientific facts or knowledge.

We now turn to the other bases upon which appellants contend we should reject respondent's expert medical opinion testimony. The appellants contend that such opinions were predicated upon the sequence of events starting with Jankowski's two falls. It is argued that by permitting expert opinion based on a sequence of events the burden of proof is thereby shifted from the employee to the employer requiring him to disprove that a preceding event in the chain was a cause of the employee's disability. We do not find this argument persuasive. Most expert medical testimony presupposes a prior sequence of events. The fact that such testimony is likely to be believed by the trier of fact, if not successfully rebutted, constitutes no shift in the burden of proof.

Specifically appellants charge that Dr. Cyrus' medical opinion was grounded on two erroneous assumptions of fact, viz., (1) that Dr. Nellen's surgery had not invaded the site of the tumor so that the trauma of the Nellen operation was eliminated as a cause of the tumor's acceleration; and (2) that Jankowski had a "profound disability" prior to the Nellen operation.

With respect to the first mentioned point, Dr. Cyrus testified ". . . the operative procedure performed by Dr. Nellen was such that it did not enter or approach the tumor, as its position was determined by Dr. Oudenhoven." Dr. Cyrus based this statement upon the hospital medical records, in which the location of the Nellen and the first Oudenhoven operations are minutely described. After reading the descriptions of these two operations from these hospital records we are unable to determine the truth of the above-quoted extract from Dr. Cyrus' testimony. Both operations were in

the same general location although Dr. Oudenhoven's was more extensive than Dr. Nellen's. In any event the word "approach" as used by Dr. Cyrus is a relative term.

Dr. Cyrus' assertion that Jankowski had a profound disability of the right leg prior to the Nellen operation is substantiated by the evidence. Dr. Nellen noted in recording Jankowski's personal past history: "Chief complaint: Pain in the right leg. Present illness: The patient has had pain in the right leg for several months and has had various types of treatment without relief."

For the reasons previously stated herein we conclude that we cannot disturb the commission's finding of fact, and, therefore, the judgment confirming the commission's interlocutory order must be affirmed.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.