COMMONWEALTH TELEPHONE COMPANY, Respondent, vs.
PUBLIC SERVICE COMMISSION, Appellant.

*April 12—May 11, 1948.*

For the appellant there was a brief by the *Attorney General* and *H. T. Ferguson,* special counsel, and oral argument by *Mr. Ferguson.*

For the respondent there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

A brief was filed by *R. M. Rieser,* attorney, and *Rieser & Mathys* of counsel, all of Madison, as *amicus curiæ.*

HUGHES, J. The principal question raised by this appeal is whether the commission must file findings of fact which embrace the essentials upon which it bases the reasonableness of its rate order.

Sec. 227.13, Stats., provides:

"Every decision of an agency in a contested case shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each contested issue of fact without recital of evidence."

The commission contends that its statement of facts is concise and sufficient. In the opinion filed by the commission with its order it stated:

"There will be a determination and finding of neither a rate base nor of a rate of return for the purposes of this proceeding. That is not to say, however, that the rates herein prescribed will be arrived at by guesswork or the mere application of an intuitive sense of justice. While the rates so prescribed are in no sense the mathematical or other result of the application of any formula or combination of formulas, there are certain considerations which constitute the essential basis for

the prescription of rates as herein made. Those considerations are:

"(1) An estimate of the reasonable future cost incurred in the furnishing of such service as the public may reasonably be expected to demand from the utility here involved.

"(2) The value of any class of that utility's service, where that value constitutes the limitation upon and practical equivalent of the rates charged therefor.

"(3) A reasonable profit which it is proper for the utility to enjoy under all relevant facts and circumstances."

The commission relies upon *Federal Power Comm. v. Hope Natural Gas Co.* (1944) 320 U. S. 591, 596-599, 64 Sup. Ct. 281, 88 L. Ed. 333, as authority for its new departure. The opinion of the court recites:

"The commission established an interstate rate base of $33,712,526 which, it found, represented the 'actual legitimate cost' of the company's interstate property less depletion and depreciation and plus unoperated acreage, working capital and future net capital additions. The commission, beginning with book cost, made certain adjustments not necessary to relate here and found the 'actual legitimate cost' of the plant in interstate service to be $51,957,416, as of December 31, 1940. It deducted accrued depletion and depreciation, which it found to be $22,328,016 on an 'economic-service-life' basis. And it added $1,392,021 for future net capital additions, $566,105 for useful unoperated acreage, and $2,125,000 for working capital. It used 1940 as a test year to estimate future revenues and expenses. It allowed over $16,000,000 as annual operating expenses—about $1,300,000 for taxes, $1,460,000 for depletion and depreciation, $600,000 for exploration and development costs, $8,500,000 for gas purchased. The commission allowed a net increase of $421,160 over 1940 operating expenses, which amount was to take care of future increase in wages, in West Virginia property taxes, and in exploration and development costs. The total amount of deductions allowed from interstate revenues was $13,495,584. . . .

"In determining the amount of accrued depletion and depreciation the commission, following *Lindheimer v. Illinois Bell Tel. Co.* 292 U. S. 151, 167-169; *Federal Power Commis-*

*sion v. Natural Gas Pipeline Co.* 315 U. S. 575, 592, 593, based its computation on 'actual legitimate cost.' It found that Hope during the years when its business was not under regulation did not observe 'sound depreciation and depletion practices' but 'actually accumulated an excessive reserve' of about $46,000,000. . . .

"Hope contended that it should be allowed a return of not less than 8%. The commission found that an 8% return would be unreasonable but that 6½% was a fair rate of return. That rate of return, applied to the rate base of $33,712,526, would produce $2,191,314 annually, as compared with the present income of not less than $5,801,171."

From that recital of facts it appears that the Federal Power Commission had at least some basis upon which it was figuring the fair return for the Hope Gas Company. The Public Service Commission in this case appears to have carried the theory which it spelled out of the *Hope Case* several steps further, and determined to keep the entire basis a secret.

The commission's order in this case was appropriately termed by the trial court to be arbitrary and unlawful. The inherent fallacy in the commission's proceeding appears from its own opinion. It set out as the third element to be considered by it, "A reasonable profit which it is proper for the utility to enjoy under all relevant facts and circumstances." The order says that the rates established will produce $12,500 of profits per annum.

How can the commission or the reviewing court or the utility or the public determine whether the profit is proper unless the commission makes specific findings of the "relevant facts and circumstances?" The commission must determine what those are and set them forth as required by law. Those essential facts which control each case will then determine the rate base.

If the rule were otherwise, the courts would have no rule to apply upon review, and the commission could on rehearing in this same case a year hence determine that the present rate is

unreasonable and that $25,000 of profits would be reasonable for the company to enjoy; and the consumers would then be bound by the commission's abstract conclusion of "reasonableness." It was not the intention of the legislature to bestow such arbitrary powers upon the commission, and nothing in the statutes can be so construed.

No purpose would be served by pointing out to the commission the methods to be employed by it on a future hearing; the trial court detailed objections to the procedure adopted by the commission.

The present method of the commission is improper and must be abandoned.

*By the Court.*—Judgment affirmed.